Marc Stuart Goldberg, LLC
Counsel to Debtors
670 White Plains Road, Suite 121
Scarsdale, New York 10583
(914) 725-8200

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x

In re:                                              Chapter 11

SECOND PHOENIX HOLDING LLC, et al.,

                                                    Case No. 18-10009 (MG)
                            Debtors,                Case No. 18-10010 (MG)
                                                    Case No. 18-10011 (MG)
                                                    (Jointly Administered)

------------------------------------------------------x

**JOINT REORGANIZATION PLAN OF SECOND PHOENIX HOLDING LLC,
HARLEM PHOENIX REALTY CORP., AND KSHEL REALTY CORP., DATED
<u>MARCH 15, 2018</u>**

INTRODUCTION                                                                             4
I. DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME                          4
    A. Scope of Definitions; Rules of Construction                   4
    B. Definitions                                                    4
    C. Rules of Interpretation                                        9
II. CLASSIFICATION OF CLAIMS AND INTERESTS                                               9
    A. Introduction                                                   9
    B. Unclassified Claims (Not Entitled to Vote on the Plan)         10
        1. Administrative Claims                   10
        2. Priority Tax Claims                     10
        3. Trustee Claims                          10
    C. Unimpaired Classes of Claims Against Debtor(s) (Not Entitled to Vote on the Plan)   10
        1. Class 1: Other Allowed Priority Claims  10
        2. Class 2: Allowed Secured Claims         10
        Class 3: General Unsecured Claims          10
    D. Unimpaired Class of Interests in Debtor(s) (Not Entitled to Vote on the Plan)   10
        1. Class 4: Interests of Evan Blum in Debtor(s)   10
III. TREATMENT OF CLAIMS AND INTERESTS                                                   10
    A. Unclassified Claims                                            10
        1. Administrative Claims                   10
        2. Priority Tax Claims                     11
        3. Trustee Claims                          11
    B. Unimpaired Classes of Claims and Interests Against Debtor(s)   11
        1. Class 1: Other Allowed Priority Claims  11
        2. Class 2: Allowed Secured Claims         11
        3. Class 3: General Unsecured Claims        12
    D. Special Provision Regarding Claims                             12
IV. MEANS FOR IMPLEMENTATION OF THE PLAN                                                 12
    A. Continued Company Existence                                    12
    B. Exit Financing                                                 13
    C. Revesting of Assets                                            13
    D. Preservation of Rights of Action                              13
    E. Effectuating Documents; Further Transactions                  13
    F. Exemption From Certain Transfer Taxes                          13
    G. Plan Implementation                                            14
    H. Funding of the Plan                                            14
V. ACCEPTANCE OR REJECTION OF THE PLAN                                                   14
    A. Classes Entitled to Vote                                       14
VI. PROVISIONS GOVERNING DISTRIBUTIONS                                                   14
    A. Distributions for Claims Allowed as of the Consummation Date   14
    B. Means of Cash Payment                                          14
    C. Delivery of Distributions                                      14
    D. Withholding and Reporting Requirements                         15
    E. Setoffs                                                        15

F. Exemption from Certain Transfer Taxes                                              15
VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES        15
   A. Assumed and Rejected Contracts and Leases                       15
   B. Bar to Rejection Damages                                         16
   C. Compensation and Benefit Plans                                   16
VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND
UNLIQUIDATED CLAIMS AND INTERESTS                                                    17
   A. Objection Deadline; Prosecution of Objections                    17
   B. No Distributions Pending Allowance                               17
   C. Distribution Reserve                                             17
   D. Distributions After Allowance                                    17
IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN                 18
   A. Conditions to Consummation                                       18
   B. Waiver of Conditions                                             18
X. MODIFICATIONS AND AMENDMENTS                                                     19
XI. RETENTION OF JURISDICTION                                                       19
XII. COMPROMISES AND SETTLEMENTS                                                    20
XIII. MISCELLANEOUS PROVISIONS                                                      20
   A. Bar Dates for Certain Claims                                     20
   B. Payment of Statutory Fees                                        20
   C. Severability of Plan Provisions                                  20
   D. Successors and Assigns                                           21
   E. Exculpation and Limitation of Liability                          21
   F. Binding Effect                                                   21
   G. Revocation, Withdrawal, or Non-Consummation                      21
   H. Notices                                                          22
   I. Term of Injunctions or Stays                                     22
   J. Governing Law                                                    22

INTRODUCTION

Second Phoenix Holding LLC ("SP"), Harlem Phoenix Realty Corp. ("HP") and Kshel Realty Corp. ("KR") (individually "Debtor" and collectively "Debtors"), hereby propose the following joint reorganization plan (the "Plan") for the resolution of Debtors' outstanding Creditor Claims and Interests. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of Debtors' history, businesses, properties, results of operations, risk factors, a summary and analysis of the Plan, and certain related matters, which is a central feature of the Plan.

Debtors are the proponents of this Plan within the meaning of Section 1129 of the Bankruptcy Code.

All holders of Claims and all holders of Interests are encouraged to read this Plan and the Disclosure Statement in their entirety before voting to accept or reject this Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Fed. R. Bankr. P. 3019 and those restrictions on modifications set forth in Article X of this Plan, Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

## I. DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

### A. Scope of Definitions; Rules of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules. Whenever the context requires, such terms shall include the plural as well as the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.

### B. Definitions

1.1    "Administrative Bar Date" shall mean, in respect of Administrative Claims, the date(s), if any, designated by the Court as the last dates for filing Administrative proofs of Claim against Debtor(s).

1.2    "Administrative Claim" shall mean a claim for any cost or expense of administration of this Chapter 11 case, made under Section 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving Debtor(s)' Estate(s), of operating Debtor(s)' Estate(s) and business and all allowances of compensation for legal or other professional services or reimbursement of costs and expenses to the extent allowed by the Court in accordance with Section 330, 331 and/or 503 of the Bankruptcy Code.

1.3    "Allowed" shall mean, when used in reference to a Claim or Interest within a particular Class, an Allowed Claim or Allowed Interest of the type described in such Class.

1.4    "Allowed Administrative Claim" shall mean all or that portion of any Administrative Claim which is an Allowed Claim

1.5    "Allowed Claim" shall mean a Claim or any portion thereof (a) as to which no objection to allowance or request for estimation has been interposed on or before the Consummation Date or the expiration of such other applicable period of limitation as may be fixed by the Bankruptcy Code, the Bankruptcy Rules, the Court, or the Plan, (b) as to which any objection to its allowance has been settled, waived through payment, or withdrawn, or has been denied by a Final Order, (c) that has been allowed by a Final Order, (d) as to which the liability of Debtor(s) and the amount thereof are determined by final order of a court of competent jurisdiction other than the Court, or (e) that is expressly allowed in a liquidated amount in the Plan; *provided howeve*r, that with respect to an Administrative Claim, that nothing herein shall be deemed to require holders of Administrative Claims incurred by Debtor(s) in the ordinary course of business, including the actual, necessary costs and expenses of operating the business of Debtor(s), to make a request for payment of such Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code.

1.6    "Allowed Priority Claim" shall mean all or that portion of an Allowed Claim, other than an Allowed Priority Tax Claim, which is a Priority Claim.

1.7    "Allowed Secured Claim" shall mean that portion of an Allowed Claim that is a Secured Claim.

1.8    "Allowed Priority Tax Claim" shall mean that portion of an Allowed Claim entitled to priority under Section 507(a) (8) of the Bankruptcy Code.

1.9    "Allowed Unsecured Claim" shall mean any Allowed Claim that is an Unsecured Claim.

1.10    "Bankruptcy Code" shall mean Title 11, United States Code (Title I of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 2.3, as amended).

1.11    "Bankruptcy Court" or "Court" shall mean the United States Bankruptcy Court for the Southern District of New York or such other court, as may have jurisdiction over these jointly administered Chapter 11 cases.

1.12    "Bankruptcy Rules" shall mean, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to these jointly administered Chapter 11 cases or proceedings therein, and the Local Rules of the Court, as applicable to these jointly administered Chapter 11 cases or proceedings therein, as the case may be.

1.13    "Bar Date(s)" shall mean the date(s), if any, designated by the Court as the last dates for filing proofs of Claims against Debtor(s).

1.14    "Business Day" shall mean any day other than a Saturday, Sunday, or legal holiday as defined in Rule 9006(a) of the Federal Rules of Bankruptcy Procedure.

1.15    "Cash" shall mean legal tender of the United States or equivalents thereof.

1.16    "Chapter 11" shall mean chapter 11 of the Bankruptcy Code.

1.17    "Chapter 7" shall mean chapter 7 of the Bankruptcy Code.

1.18    "Claim" shall mean a claim against Debtor(s) as defined in Section 101(5) of the Bankruptcy Code, to wit: (a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

      1.19    "Claimant" or "Creditor" shall mean the holder of an Allowed Claim.

      1.20    "Class" shall mean a class of holders of Allowed Claims described in Article II of this Plan.

      1.21    "Collateral" shall mean any property or interest in property of Debtor(s) Estate(s) subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

      1.22    "Confirmation" shall mean entry of an Order of the Court confirming this Plan.

      1.23    "Confirmation Date" shall mean the date upon which the Court enters the Confirmation Order.

      1.24    "Confirmation Hearing" shall mean the hearing to consider confirmation of the Plan under Section 1128 of the Bankruptcy Code.

      1.25    "Confirmation Order" shall mean the Order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

      1.26    "Consummation Date" shall mean the Effective Date.

      1.27    "Court" shall mean the United States Bankruptcy Court for the Southern District of New York.

      1.28    "Cure" shall mean the distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to Section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

      1.29    "Debtor" or "Debtors" shall mean SP, HP and/or KR, as applicable, as debtor(s)-in-possession, prior to the Confirmation Date.

      1.30    "Disallowed Claim" shall mean any claim or portion thereof that has been disallowed by a Final Order.

      1.31    "Disallowed Interest" shall mean any Stock Interest or portion thereof that has been disallowed by a Final Order.

      1.32    "Disbursing Agent" shall mean the Debtors.

      1.33    "Disclosure Statement" shall mean the written disclosure statement that relates to the Plan, dated March 15, 2018, as may be amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with Sections 1125 and 1126(b) of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

      1.34    "Disputed Claim" shall mean (a) any claim or portion of a claim (other than an Allowed Claim), which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (b) a claim which has been filed pursuant to Section 501(a) of the Bankruptcy Code as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined in whole or in part, by a Final Order.

   1.35 "Disputed Interest" shall mean (a) any Equity Interest (other than an Allowed Equity Interest), which is scheduled by Debtor(s) as disputed, contingent or unliquidated, or (b) an Equity Interest which has been filed pursuant to Section 501(a) of the Bankruptcy Code as unliquidated or contingent, or (c) an Equity Interest which has been filed pursuant to Section 501(a) of the Bankruptcy Code and as to which an objection to the allowance thereof has been interposed within the time limitation fixed by the Bankruptcy Code, by an order of the Court, or by this Plan, which objection has not been determined, in whole or in part, by a Final Order.

   1.36 "Distribution Date" means the Effective Date.

   1.37 "Distribution Reserve" means that amount of Cash reserve from the Cash to be distributed under the Plan as to any Disputed Claim.

   1.38 "East 125th Street" shall mean SP's real property located at 212, 214 and 216 East 125th Street, New York, New York 10035.

   1.39 "Effective Date" shall mean the date the Confirmation Order becomes a Final Order.

   1.40 "Entity" shall have the meaning provided by Section 101(15) of the Bankruptcy Code.

   1.41 "Equity Security" shall have the meaning provided by Section 101(16) of the Bankruptcy Code.

   1.42 "Equity Security Holder" shall have the meaning provided by Section 101(17) of the Bankruptcy Code.

   1.43 "Estate(s)" shall mean the estate(s) of Debtor(s) created in the Reorganization Cases by Section 541 of the Bankruptcy Code.

   1.44 "Evan Blum" shall mean Evan Blum, President and Sole Shareholder of HP and KR and Manager of SP.

   1.45 "Exit Financing" shall mean the proceeds realized from the Loan on or before the Effective Date.

   1.46 "Federal Rules of Bankruptcy Procedure" shall mean the Bankruptcy Rules, As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991, as the same shall from time to time be amended.

   1.47 "Filing Date" shall mean January 3, 2018, the date of the commencement of the Reorganization Case(s) as voluntary Chapter 11 case(s) under the Bankruptcy Code.

   1.48 "Final Order" shall mean an order of judgment of the Court which has not been reversed, stayed, modified or amended and as to which the time to seek reargument, appeal or seek certiorari or review has expired and as to which no appeal or petition for certiorari or review is pending or as to which any right to appeal or to seek certiorari or review has been waived.

   1.49 "General Unsecured Claim" shall mean a Claim against Debtor(s) that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim or Secured Claim.

   1.50 "HP" shall mean Harlem Phoenix Realty Corp.

   1.51 "HP Assets" shall mean all of the assets of HP.

   1.52 "Impaired" shall mean, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

   1.53 "Insiders" shall have the meaning provided by Section 101(31) of the Bankruptcy Code.

   1.54 "Interest" shall mean the interest of an Equity Security Holder.

   1.55 "KR" shall mean Kshel Realty Corp.

1.56    "KR Assets" shall mean all of the assets of KR.

1.57    "Lender" shall mean that entity providing the Loan.

1.58    "Lien" shall have the meaning provided by Section 101(37) of the Bankruptcy Code.

1.59    "Loan" shall mean the proceeds to be realized by Debtor(s) in accordance with the refinancing of SP Assets, HR Assets and/or KR Assets.

1.60    "Persons" shall have the meaning provided by Section 101(41) of the Bankruptcy Code.

1. 61    "Plan" shall mean this Plan of Reorganization dated March 15, 2018 and any exhibits thereto and any documents delivered in connection therewith, as the same may, from time to time, be amended by any duly authorized amendment or modification to the extent permitted therein or by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure.

1.62    "Priority Claim" shall mean a Claim which qualifies as such under Section 507(a) (3), (4) and (6) of the Bankruptcy Code.

1.63    "Priority Tax Claim" shall mean a Claim which qualifies as such under Section 507(a) (8) of the Bankruptcy Code.

1.64 "Professionals" shall mean those persons retained pursuant to an order of the Court in accordance with Sections 327 and 1102 of the Bankruptcy Code.

1.65    "Property" shall have the meaning provided by Section 541 of the Bankruptcy Code.

1.66    "Pro-Rata" shall mean, as to intraclass calculations, the ratio of an Allowed Claim in a particular class to the amount of all Claims of that Class.

1.67    "Reinstated" or "Reinstatement" shall mean (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the holder of such Claim so as to leave such Claim unimpaired in accordance with Section 1124 of the Bankruptcy Code or (b) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in Section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitles the holder of such Claim.

1.68    "Reorganization Case(s)" shall mean the jointly administered case of Debtors under case number 18-B 10009 (MG).

1.69    "Reorganized Debtor(s)" shall mean Debtor(s), on and after the Effective Date.

1.70    "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by Debtor(s) as such schedules or statements may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

1.71    "Second Avenue" shall mean SP's real property located at 14 2nd Avenue, New York, New York 10003.

1.72    "Secured Claim" shall mean a Claim that is secured by a Lien upon property, or the proceeds of the sale of such property, in which Debtor(s) has an interest, to the extent of the value, as of the Consummation Date or such later date as is established by the Bankruptcy Court, of such Lien as determined by a Final Order of the Bankruptcy Court

pursuant to Section 506 of the Bankruptcy Code or as otherwise agreed upon in writing by the Debtor(s) and/or the Reorganized Debtor(s), as the case may be, and the holder of such Claim.

    1.73    "Secured Creditor" shall mean the holder of an Allowed Secured Claim.

    1.74    "SKW" shall mean SKW EAST VH LLC, Debtors' disputed senior secured creditor.

    1.75    "SP" shall mean Second Phoenix Holding LLC.

    1.76    "SP Assets" shall mean all of the assets of SP.

    1.77    "Substantial Consummation" shall mean the date that the first distribution is made under the Plan.

    1.78    "Trustee Claim" shall mean all fees and charges assessed against the Debtor(s)' Estate(s) pursuant to Section 1930 of Title 28, United States Code.

    1.79    "Unimpaired Claim" shall mean a Claim that is not an Impaired Claim.

    1.80    "Unimpaired Interest" shall mean an Interest that is not an Impaired Interest.

    1.81    "Unsecured Claim" shall mean a Claim that is not an Administrative Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim or an Interest.

C. Rules of Interpretation

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document's being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to Sections, Articles, Schedules, and Exhibits are references to Sections, Articles, Schedules, and Exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

D. Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## II. CLASSIFICATION OF CLAIMS AND INTERESTS

A. Introduction

All Claims and Interests, except Administrative Claims, and Priority Tax Claims, are placed in the Classes set forth below. In accordance with Section 1123(a) (1) of the Bankruptcy Code, Administrative Claims, and Priority Tax Claims, as described below, have not been classified. A Claim or Interest is placed in a particular Class only to the extent that the Claim or Interest falls within the description of that Class, and is classified in other Classes to the extent that any

portion of the Claim or Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Consummation Date.

B. Unclassified Claims (Not Entitled to Vote on the Plan)

*1. Administrative Claims*

*2. Priority Tax Claims*

*3. Trustee Claims*

C. Unimpaired Classes of Claims Against Debtor(s) (Not Entitled to Vote on the Plan)

*1. Class 1: Other Allowed Priority Claims*

Class 1 consists of all Allowed Priority Claims against Debtor(s).

*2. Class 2: Allowed Secured Claims*

Class 2 consists of all Allowed Secured Claims against Debtor(s).

*Class 3: General Unsecured Claims*

Class 3 consists of all Allowed General Unsecured Claims against Debtor(s).

D. Unimpaired Class of Interests in Debtor(s) (Not Entitled to Vote on the Plan)

*1. Class 4: Interests of Evan Blum in Debtor(s)*

Class 4 consists of the Interests of Evan Blum

## III. TREATMENT OF CLAIMS AND INTERESTS

A. Unclassified Claims

*1. Administrative Claims*

Except as otherwise provided for herein on, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date such Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date such Administrative Claim becomes payable pursuant to any agreement between Reorganized Debtor(s) and the holder of such Administrative Claim, each holder of an Allowed Administrative Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim (a) Cash equal to the unpaid portion of such Allowed Administrative Claim or (b) such other treatment as to which Reorganized Debtor(s) and such holder shall have agreed upon in writing; *provided*

*howeve*r, that Allowed Administrative Claims with respect to liabilities incurred by Debtor(s) in the ordinary course of business during the Chapter 11 Case(s) shall be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto.

## 2. Priority Tax Claims

On, or as soon as reasonably practicable after, the later of (i) the Distribution Date or (ii) the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim (a) Cash equal to the unpaid portion of such Allowed Priority Tax Claim or (b) such other treatment as to which Reorganized Debtor(s) and such holder shall have agreed upon in writing. No holder of an Allowed Priority Tax Claim shall be entitled to any payments on account of any pre-Consummation Date interest accrued on or penalty arising after the Petition Date with respect to or in connection with such Allowed Priority Tax Claim.

## 3. Trustee Claims

On or before the Effective Date, to the extent not paid theretofore, the United States Trustee will receive a cash payment in the full amount of the Trustee Claim. The Disbursing Agent will pay all expenses owing to the United States Trustee in accordance with Section 1930 of Title 28, United States Code, until such time as the Chapter 11 Case is closed. The Disbursing Agent will file monthly financial reports until a final decree is entered or the case is converted or dismissed with the Court and serve the same on the United States Trustee.

## B. Unimpaired Classes of Claims and Interests Against Debtor(s)

## 1. Class 1: Other Allowed Priority Claims

On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date such Class 1 Other Priority Claim becomes an Allowed Class 1 Other Priority Claim or (iii) the date such Class 1 Other Priority Claim becomes payable pursuant to any agreement between Reorganized Debtor(s) and the holder of such Class 1 Other Priority Claim, each holder of an Allowed Class 1 Other Priority Claim shall receive in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Class 1 Other Priority Claim, in the sole discretion of Debtor(s) and/or Reorganized Debtor(s), as the case may be, (a) Cash equal to the unpaid portion of such Allowed Class 1 Other Priority Claim or (b) such other treatment as to which Reorganized Debtor(s) and such holder shall have agreed upon in writing.

## 2. Class 2: Allowed Secured Claims

Each holder of an Allowed Class 2 Secured Claim shall be treated as a separate class for all purposes under this Plan. Each holder of an Allowed Class 2 Claim shall, at the sole election of Reorganized Debtor(s), either retain the Property in which the Allowed Class 2 Secured Claimant enjoys a collateral security interest or, receive a cash distribution equal in amount to the aggregate value of such Allowed Secured Claimant's liens on such collateral. To the extent, if any, that the value of the collateral securing a Class 2 Secured Claim is less than the total

11

amount of such Claim, the difference shall be treated as a Class 3 General Unsecured Claim. Reorganized Debtor(s) specifically reserves all rights to challenge the validity, nature and perfection of, and to avoid pursuant to the provisions of the Bankruptcy Code and other applicable law, any purported Liens.

*3. Class 3: General Unsecured Claims*

Allowed Class 3 Claimants will receive one hundred (100%) per cent of their Allowed Class 3 Claims, with interest, on the Effective Date.

*4. Class 4: Interests in Debtor(s)*

The Interests of Evan Blum in HP and KR will be retained by EB.

D. Special Provision Regarding Claims

Except as otherwise provided in the Plan, nothing shall affect Debtor(s)' or Reorganized Debtor(s)' rights and defenses, both legal and equitable, with respect to any claims, including, but not limited to, all rights with respect to legal and equitable defenses to setoffs or recoupments against Claims.

## IV. MEANS FOR IMPLEMENTATION OF THE PLAN

A. Continued Company Existence

Debtor(s) shall continue to exist after the Confirmation Date in accordance with applicable law in the jurisdiction in which it is organized. From the proceeds realized from the Exit Financing and the income realized by Debtor(s) from the operation of its business, Debtor(s) shall satisfy the Class 1, 2 and 3 Claims and pay the expenses to be owing to the United States Trustee in accordance with section 1930 of title 28, United States Code, until such time as the Chapter 11 Case is closed.

No one other than Debtor(s) and/or Reorganized Debtor(s), as the case may be, their successors and/or assigns, shall be empowered to realize on or pursue Property of the Estate(s). Debtor(s) and/or the Reorganized Debtor(s), as the case may be, shall be responsible for (a) marshalling Debtor(s)' Property under chapter 5 of the Bankruptcy Code, (b) selling or disposing of non-cash Property, (c) reviewing, objecting to and/or resolving disputed claims against the Estate(s), and (d) acting as disbursing agent with respect to all distributions to be made under the Plan. Debtor(s) and/or Reorganized Debtor(s), as the case may be, shall have the power to sue or be sued, and may retain counsel and may employ or contract with other Entities to assist it in making distributions. Debtor(s) and/or Reorganized Debtor(s), as the case may be, and those employed or contracted with by them, will be compensated as agreed to by Debtor(s) and/or Reorganized Debtor(s), as the case may be, together with reasonable out of pocket expenses. The funds to be made available for such purpose shall be reserved from the Estate(s).

B. Exit Financing

At or prior to the Effective Date, Debtor(s) will have closed on the sale of Second Avenue and secured the Exit Financing in a cumulative amount equal to or greater to than will be required to satisfy all Claims, including, but not limited to Administrative, Priority, Secured, Unsecured and the Claims of the United States Trustee. Lender will extend the Loan to Debtor(s). Confirmation of the Plan shall be authority in Debtor(s) to enter into the Exit Financing and to provide the Exit Lender with a first security interest in all of Debtor(s)' Assets.

C. Revesting of Assets

Any property of Debtor(s) that is not distributed to Allowed Claimants in accordance with this Plan and that is not specifically disposed of pursuant to the Plan shall revest in Reorganized Debtor(s) as of the date of entry of a final decree in this case.

D. Preservation of Rights of Action

Except as otherwise provided in this Plan or the Confirmation Order, or in any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code, Debtor(s) and/or Reorganized Debtor(s), as the case may be, shall exclusively retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights or causes of action, suits, and proceedings, whether in law or in equity, whether known or unknown, that Debtor(s) or its Estate(s) may hold against any Person or entity. Debtor(s) and/or Reorganized Debtor(s), as the case may be, or their successor(s) may pursue such retained claims, rights or causes of action, suits, or proceedings as appropriate, in accordance with the best interests of Debtor(s) and/or Reorganized Debtor(s), as the case may be, or their successor(s) who hold such rights.

E. Effectuating Documents; Further Transactions

Debtor(s) and/or Reorganized Debtor(s), as the case may be, shall be authorized and is directed to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

F. Exemption From Certain Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers from Debtor(s) to any Person or entity pursuant to the Plan or pursuant to an Order of the Court that contemplates that the proceeds of all or part of such transfer(s) shall be distributed in accordance with this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental

assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

G. Plan Implementation

This Plan is to be implemented in a manner consistent with Section 1142 of the Bankruptcy Code. In the event of any inconsistency between the Bankruptcy Code and the Plan, first the Bankruptcy Code will control and thereafter the Plan.

H. Funding of the Plan

Funding for the Plan shall be from the proceeds realized from the sale of Second Avenue and/or the sale of 2nd Avenue and East 125th Street and/or the Exit Financing.

## V. ACCEPTANCE OR REJECTION OF THE PLAN

A. Classes Entitled to Vote

No Class is entitled to vote as no Class is Impaired under the Plan. Each Unimpaired Class of Claims and Interests is deemed to have accepted the Plan and, therefore, is not entitled to vote to accept or reject the Plan.

## VI. PROVISIONS GOVERNING DISTRIBUTIONS

A. Distributions for Claims Allowed as of the Consummation Date

Except as otherwise provided herein or as ordered by the Court, distributions to on account of Allowed Class 1, Class 2 and Class 3 Claims and Class 4 Interests, shall be made on the Effective Date. Distributions on account of Class 1, Class 2 and Class 3 Claims and/or Class 4 Interests that first become Allowed Claims after the Consummation Date, shall be made as otherwise set forth in this Plan.

B. Means of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. funds, by check or wire transfer, or in such commercially reasonable manner, as the Disbursing Agent shall determine in its sole discretion.

C. Delivery of Distributions

Subject to Order(s) of the Court to the contrary, distributions to holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the proofs of Claim filed by such holders (or at the last known addresses of such holders if no proof of Claim is filed or if the Disbursing Agent shall not have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related proof of Claim, (c) at the addresses reflected in the Schedules if no proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address.

If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless the disbursing Agent is properly notified within 90 days following such return, of such holder's address change. Amounts in respect of undeliverable distributions made through the Disbursing Agent shall be utilized in satisfaction of remaining Allowed Claims. All claims for undeliverable distributions must be made on or before the 90 day anniversary of the Consummation Date.

### D. Withholding and Reporting Requirements

In connection with this Plan and all distributions hereunder, the Disbursing Agent shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions hereunder shall be subject to any such withholding and reporting requirements. The Disbursing Agent shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements.

### E. Setoffs

The Disbursing Agent may, but shall not be required to, set off against any Claim, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtor(s) may have against the holder of such Claim; provided however, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Disbursing Agent of any such claim that Debtor(s) may have against such holder.

### F. Exemption from Certain Transfer Taxes

Pursuant to Section 1146(c) of the Bankruptcy Code, any transfers prior to Confirmation of this Plan or in accordance herewith from the Disbursing Agent to any Person or entity shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment. The Court's Order authorizing such a sale and/or the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.


## VII. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A. Assumed and Rejected Contracts and Leases

Except as otherwise provided in the Plan or earlier order(s) of the Court, all executory contracts and unexpired leases to which Debtor(s) is a party, will be rejected; *provided, however*, that pursuant to Section 365(d) (2) of the Bankruptcy Code, Debtor(s) reserves the right, at any time prior to the Confirmation Date, to modify the Plan to provide for the assumption of any executory contract or unexpired lease to which Debtor(s) is a party.

If the rejection, pursuant to this Plan, or otherwise, of an executory contract or unexpired lease results in a Claim, then such Claim will be forever barred and unenforceable against Debtor(s) Estate(s) or its Properties, unless a proof of Claim is filed with the clerk of the Court and served on counsel for the Company within thirty (30) days after service of the earlier of (i) notice of entry of the Confirmation Order or (ii) other notice that the executory contract or unexpired lease has been rejected.

Except as otherwise provided in the Plan, or in any contract, instrument, release, indenture, or other agreement or document entered into in connection with this Plan, as of the date immediately preceding the Filing Date, the Plan will be deemed to have rejected each executory contract and unexpired lease to which Debtor(s) is a party, unless such contract or lease (i) was previously assumed, (ii) previously expired or terminated pursuant to its own terms, or (iii) is the subject of a motion to assume filed on or before the Confirmation Date. The Confirmation Order will constitute an order of the Court under Section 365 of the Bankruptcy Code approving the contract and lease rejections described above, as of the date immediately preceding the Filing Date.

## B. Bar to Rejection Damages

If the rejection by this Plan or otherwise, of an executory contract or unexpired lease results in a Claim that is not theretofore evidenced by a timely filed proof of Claim or a proof of Claim that is deemed to be timely filed under applicable law, then such Claim shall be forever barred and shall not be enforceable against Debtor(s)' Estate(s), or its Properties, unless a proof of Claim is filed with the Clerk of the Bankruptcy Court and served on counsel for Debtor(s)s within thirty (30) days after service of the earlier of (i) notice of entry of the Confirmation Order or (ii) other notice that the executory contract or unexpired lease has been rejected.

## C. Compensation and Benefit Plans

Except and to the extent previously assumed by an order of the Court, on or before the Confirmation Date, and except as set forth herein, all employee compensation and Benefit Plans of Debtor(s), including programs subject to Sections 1114 and 1129(a)(13) of the Bankruptcy Code, and all employment agreements, entered into before the Petition Date and not since terminated, shall be deemed to be, and shall be treated as though they are, executory contracts that are rejected under Article VII.A of the Plan (to the extent such rejection does not violate Sections 1114 and 1129(a)(13) of the Bankruptcy Code), except for (i) executory contracts or Benefit Plans specifically assumed  and (ii) executory contracts or Benefit Plans as have previously been rejected, are the subject of a motion to reject, or have been specifically waived by the beneficiaries of any Benefit Plans or contracts; *provided, howeve*r, that Debtor(s)' obligations, if any, to pay all "retiree benefits" as defined in Section 1114(a) of the Bankruptcy Code shall continue.

## VIII. PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT AND UNLIQUIDATED CLAIMS AND INTERESTS

### A. Objection Deadline; Prosecution of Objections

Any party in interest may object to any Claim prior to the Confirmation Date. Except as provided in Article VII B. above, as soon as practicable, but in no event later than ninety (90) days after the Confirmation Date (unless extended by an order of the Court), Debtor(s) and/or Reorganized Debtor(s), as the case may be, may file objections to Claims (including any Administrative Claim, Priority Tax Claim, Other Priority Claim, Secured Claim, and Unsecured Claim) with the Court and serve such objections upon the holders of each of the Claims to which objections are made. Nothing contained herein, however, shall limit Debtor(s) and/or Reorganized Debtor(s)', as the case may be, right to object subsequent to ninety (90) days after the Confirmation Date to Claims, if any, filed or amended more than thirty (30) days after the Confirmation Date.

### B. No Distributions Pending Allowance

Notwithstanding any other provision of the Plan, no payments or distributions shall be made with respect to any portion of a Disputed Claim or Interest unless and until the objection to such portion of the Disputed Claim or Interest have been settled or withdrawn or have been determined by Final Order. That portion of the Claim to which there is no dispute shall be paid as otherwise provided for under the Bankruptcy Code or in this Plan.

### C. Distribution Reserve

1. The Disbursing Agent shall withhold the Distribution Reserve from the Cash to be distributed under the Plan. As to any Disputed Claim or Interest, upon a request for estimation by Debtor(s) and/or Reorganized Debtor(s), as the case may be, the Court shall determine what amount is sufficient to withhold as the Distribution Reserve. Debtor(s) and/or Reorganized Debtor(s), as the case may be, may request estimation for every Disputed Claim or Interest that is unliquidated and the Disbursing Agent shall withhold the Distribution Reserve based upon the estimated amount of such Claim or Interest as set forth in a Final Order. If Debtor(s) and/or Reorganized Debtor(s), as the case may be, elects not to request such estimation from the Court with respect to a Disputed Claim or Interest that is liquidated, except as provided in Article III D. above, the Disbursing Agent shall withhold the Distribution Reserve based upon the face amount of such Claim or Interest.

2. If practicable, the Disbursing Agent shall invest any Cash that is withheld as the Distribution Reserve in a manner that shall yield a reasonable net return, taking into account the safety of the investment.

### D. Distributions After Allowance

The Disbursing Agent shall make payments and distributions from the Distribution Reserve to each holder of a Disputed Claim or Interest that has become an Allowed Claim or Interest in accordance with the provisions of the Plan governing the class of Claims or Interests to which such holder belongs. On the next succeeding interim distribution date after the date that the order

or judgment of the Court allowing all or part of such Claim or Interest becomes a Final Order, the Disbursing Agent shall distribute to the holder of such Claim or Interest any Cash that would have been distributed on the Distribution Date had such Allowed Claim or Interest been allowed on the Distribution Date. After a Final Order has been entered, or other final resolution has been reached, with respect to each Disputed Claim or Interest, any Cash or other Property remaining in the Distribution Reserve shall become Property of Debtor(s)' Estate(s), to be utilized in accordance with the provisions of this Plan. All distributions made under this Article VIII.D of this Plan on account of an Allowed Claim or Interest shall be made together with any dividends, payments or other distributions made on account of, as well as any obligations arising from, the distributed Property, as if such Allowed Claim or Interest had been an Allowed Claim or Interest on the Distribution Date.

## IX. CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A. Conditions to Consummation

The following are conditions precedent to the occurrence of the Consummation Date, each of which must be (i) satisfied or (ii) waived by Debtor(s) in accordance with Article IX.C below: The Confirmation Order must have become a Final Order and must, among other things, provide that: (a) Debtor(s) and/or Reorganized Debtor(s), as the case may be, is authorized and directed to take all actions necessary or appropriate in connection with this Plan; (b) the provisions of the Confirmation Order are nonseverable and mutually dependent; (c) the transfers of Property by Debtor(s) to the Disbursing Agent (i) are or will be legal, valid and effective transfers of Property, (ii) vest or will vest the Disbursing Agent with good title to such Property free and clear of all liens, charges, Claims, encumbrances or interests, except as expressly provided in the Plan or Confirmation Order, (iii) do not and will not constitute avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or nonbankruptcy law and (iv) do not and will not subject the Disbursing Agent or its professionals to any liability by reason of such transfer under the Bankruptcy Code or under applicable nonbankruptcy law, including, without limitation, any laws affecting successor or transferee liability.

1. The sale of Second Avenue will have closed and Debtor(s) will have secured the Exit Financing.

2. All authorizations, consents and regulatory approvals required, if any, in connection with the consummation of the Plan shall have been obtained.

3. All other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

### B. Waiver of Conditions

Each of the conditions set forth in Articles IX.A above may be waived in whole or in part by Debtor(s) in its sole and absolute discretion without any notice to parties in interest or the Court and without a hearing. The failure to satisfy or waive any condition to the Consummation Date may be asserted by Debtor(s) regardless of the circumstances giving rise to the failure of such condition to be satisfied. The failure of Debtor(s) to exercise any of the foregoing rights shall not

be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

## X. MODIFICATIONS AND AMENDMENTS

Debtor(s) may alter, amend or modify this Plan or any Exhibits thereto under Section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date. After the Confirmation Date and prior to substantial consummation of the Plan, as defined in Section 1101(2) of the Bankruptcy Code, Reorganized Debtor(s) may institute, under Section 1127(b) of the Bankruptcy Code, proceedings in the Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of this Plan so long as such proceedings do not materially adversely affect the treatment of holders of Claims under the Plan; provided however, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Court.

## XI. RETENTION OF JURISDICTION

Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Consummation Date, the Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to: (a) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any objections to the allowance or priority of Claims; (b) hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under Sections 330 and 331 of the Bankruptcy Code; *provided, however*, that from and after the Consummation Date, the payment of the fees and expenses of the retained professionals of Reorganized Debtor(s) shall be made in the ordinary course of business of Reorganized Debtor(s) in effectuating this Plan and shall not be subject to the approval of the Court; (c) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which Debtor(s) is a party or with respect to which Debtor(s) may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom; (d) effectuate performance of and payments under the provisions of this Plan through Substantial Consummation; (e) hear and determine any and all adversary proceedings, motions, applications and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case; (f) enter such orders as may be necessary or appropriate to execute, implement or consummate the provisions of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, the Disclosure Statement or the Confirmation Order; (g) hear and determine disputes arising in connection with the interpretation, implementation, consummation or enforcement of this Plan and all other agreements, documents or instruments executed in connection with this Plan; (h) consider any modifications of this Plan, cure any defect or omission or reconcile any inconsistency in any order of the Court, including, without limitation, the Confirmation Order; (i) issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity

with implementation, consummation or enforcement of this Plan or the Confirmation Order; (j) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified or vacated; (k) hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, other agreement or document created in connection with this Plan, the Disclosure Statement, or the Confirmation Order; (l) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Chapter 11 Case; (m) recover all assets of Debtor(s) and Property of Debtor(s)' Estate(s), wherever located; (n) hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code; (o) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and (p) enter a final decree closing the Chapter 11 Case.

## XII. COMPROMISES AND SETTLEMENTS

Pursuant to Fed. R. Bankr. P. 9019(a), Debtor(s) and/or Reorganized Debtor(s), as the case may be, shall have the exclusive right and may compromise and settle Claims against Debtor(s)' Estate(s) and/or claims that Debtor(s)' Estate(s) may have against other Persons. Debtor(s) and/or Reorganized Debtor(s), as the case may be, expressly reserve their rights (without Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against Debtor(s)' Estate(s) and claims that Debtor(s)' Estate(s) may have against other Persons.

## XIII. MISCELLANEOUS PROVISIONS

### A. Bar Dates for Certain Claims

All final requests for compensation or reimbursement of Professional Fees pursuant to Sections 327, 328, 330 and 331 of the Bankruptcy Code for services rendered in connection with this Chapter 11 Case prior to the Consummation Date must be timely filed no later than on the Consummation Date, unless otherwise ordered by the Court.

### B. Payment of Statutory Fees

All fees payable pursuant to Section 1930 of Title 28 of the United States Code not paid prior to Confirmation shall be paid as determined by the Court at the Confirmation Hearing, on or before the Effective Date.

### C. Severability of Plan Provisions

If, prior to Confirmation, any term or provision of this Plan is held by the Court to be invalid, void or unenforceable, the Court, at the request of Debtor(s) and/or Reorganized Debtor(s), as the case may be, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall

then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

D. Successors and Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

E. Exculpation and Limitation of Liability

Neither Debtor(s) and/or Reorganized Debtor(s), as the case may be, their respective current or former members, officers, employees, advisors, attorneys, accountants, or agents, shall have or incur any liability to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, affiliates or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the solicitation of acceptances of this Plan, the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the Property to be distributed under this Plan, except for their willful misconduct and gross negligence, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under this Plan. The foregoing exculpation and limitation on liability shall not, however, limit, abridge or otherwise affect the rights, if any, of Debtor(s) and/or Reorganized Debtor(s), as the case may be, to enforce, sue on, settle or compromise the "Rights of Action" retained pursuant to Article IV D. hereof.

F. Binding Effect

This Plan shall be binding upon and inure to the benefit of all present and former holders of Claims against Debtor(s), their respective successors and assigns, and all other parties in interest in this Chapter 11 Case.

G. Revocation, Withdrawal, or Non-Consummation

Debtor(s) reserves its right to revoke or withdraw this Plan at any time prior to the Confirmation Date and to file other plans of reorganization. If Debtor(s) revokes or withdraws this Plan, or if Confirmation or Consummation does not occur, then (i) this Plan shall be null and void in all respects, (ii) any other settlement or compromise embodied in this Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void and (iii) nothing contained in this Plan, and no acts taken in preparation for consummation of this Plan, shall (a) constitute or be deemed to constitute a waiver or release of any Claims by or against Debtor(s) or any other Person, (b)

prejudice in any manner the rights of Debtor(s) or any Person in any further proceedings involving Debtor(s) or (c) constitute an admission of any sort by Debtor(s) or any other Person.

H. Notices

Any notice, request or demand required, permitted to be made or provided to or upon Debtor(s) and/or Reorganized Debtor(s), as the case may be, under the Plan shall be (i) in writing, (ii) served by (a) certified mail, return receipt requested, (b) hand delivery, (c) overnight delivery service, (d) first class mail or (e) facsimile transmission and (iii) deemed to have been duly given or made when actually delivered or, in the case of notice by electronic mail, when received, and addressed as follows:

Debtors
c/o Evan Blum
216 East 125th Street
New York, New York 10035

with a copy to:

Marc Stuart Goldberg, LLC
Attn: Marc Stuart Goldberg, Esq.
670 White Plains Road
Suite 121
Scarsdale, New York 10583

I. Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under Sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the Confirmation Date (excluding any injunctions or stays contained in this Plan or the Confirmation Order), shall remain in full force and effect until the Consummation Date.

J. Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York shall govern the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan and the principles of conflicts of law, if any.

Dated: Scarsdale, New York
          March 15, 2018

Second Phoenix Holding LLC

By: _____
          Evan Blum, Manager

Harlem Phoenix Realty Corp.

By: _____
          Evan Blum, President and Sole Shareholder

Kshel Realty Corp.

By: _____
          Evan Blum, President and Sole Shareholder

                          Marc Stuart Goldberg, LLC
                          Attorneys for Debtors
                          By: _____
                          Marc Stuart Goldberg
                          670 White Plains Road
                          Suite 121
                          Scarsdale, New York 10583
                          (914) 725-8200