UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
In re:                                                    Chapter 11
                                                          Case No. 18-10009-mg
SECOND PHOENIX HOLDING LLC, et al.,                       Jointly Administered

                                    Debtors.
------------------------------------------------------------------X

STIPULATION OF SETTLEMENT BETWEEN DEBTORS
AND SKW EAST VH LLC AND ORDER UPON CONSENT
OF THE DEBTORS AND SKW EAST VH LLC:
(I) ALLOWING TIME FOR DEBTORS TO MARKET
AND SELL AND/OR REFINANCE PROPERTIES; (II)
DISMISSING THE CHAPTER 11 CASES IF DEADLINES
NOT MET, AND (III) GRANTING RELATED RELIEF

This Stipulation of Settlement (the "Stipulation"), dated as of April 25, 2018, is entered into between Second Phoenix Holding LLC ("Second Phoenix" or "Propco"), Harlem Phoenix Realty Corp. ("Harlem Phoenix") and Kshel Realty Corp. ("Kshel" and together with Second Phoenix and Harlem Phoenix, the "Debtors") and SKW East VH LLC ("SKW" or "Lender" and together with the Debtors, the "Parties").

## RECITALS

**The SKW Loan**

A.    In March 2016, SKW loaned Second Phoenix the sum of $12,000,000.00 (the "Loan").

B.    On March 14, 2016, in consideration of the Loan, Second Phoenix executed a certain Promissory Note in which Second Phoenix promised to repay the $12,000,000.00 to SKW with applicable interest thereon (the "Note"). The Note was a short-term bridge loan for Second Phoenix. The term of the Note is eighteen (18) months and interest was prepaid at the time the Loan was made and the Note executed, and no other payments were to be made until a balloon payment of the $12,000,000.00 principal was due on September 14, 2017 (the "Maturity Date").

  C. The Note provides for Default Interest at a rate of 20%.

**The Mortgage**

  D. On or about March 14, 2016, Second Phoenix executed, duly acknowledged and delivered to SKW an Amended, Restated and Consolidated Mortgage and Security Agreement (the "Mortgage") securing payment of the Note in the principal sum of $12,000,000.00. Said Mortgage was duly recorded in the Office of the Clerk, County of New York in CRFN 2016000096692 on March 18, 2016 as a lien against the Properties (i.e. 212 East 125th Street, New York, New York 10035, 214/216 East 125th Street, New York, New York 10035 and 14 Second Avenue, New York, New York 10003) (collectively, the "Mortgaged Premises") and the mortgage tax and recording fee were duly paid.

**ALR**

  E. Also on March 14, 2016, Second Phoenix executed and delivered to SKW that certain Absolute Assignment of Leases and Rents (the "ALR").

  F. Second Phoenix executed a non-residential real property lease for the East 125th Street property dated March 14, 2016 with its affiliate Brown Meadow, Inc.

**The Pledges**

  1) **Kshel**

  G. On or about March 14, 2016, as further security for the payment of the Note, Kshel pledged its 52.42% membership interest in Second Phoenix to SKW (the "Kshel Pledge"). Pursuant to the Kshel Pledge, SKW filed a UCC 1 financing statement with the New York State Department of State (the "Kshel UCC 1").

  2) **Harlem Phoenix**

  H. On or about March 14, 2016, as further security for the payment of the Note, Harlem

2

Phoenix pledged its 47.58% membership interest in Second Phoenix to SKW (the "Harlem Pledge"). Pursuant to the Harlem Pledge, SKW filed a UCC 1 financing statement with the New York State Department of State (the "Harlem UCC 1").

I. Prior to the commencement of these chapter 11 cases, SKW noticed a sale pursuant to UCC 9-611 to sell Harlem's and Kshel's membership interests in Second Phoenix.

**The Guaranty**

J. On or about March 14, 2016, Evan Blum executed and delivered to SKW a Guaranty of Payment of the Note (the "Blum Guaranty") and pledges of his shareholder interests in Kshel and Harlem (the "Blum Pledges" and together with the Blum Guaranty, the Note, Mortgage, Harlem Pledge, Harlem UCC-1, Kshel Pledge, Kshel UCC-1, the "Loan Documents"). The Debtors' obligations under the Loan Documents are secured by liens and mortgages on assets of the Debtors including the Properties (the "Collateral"), as defined in the Loan Documents.

**The Default**

K. Second Phoenix failed to make the required balloon payment on September 14, 2017. Thereafter, SKW noticed the default.

**The UCC Sale**

L. On or about October 9, 2017, SKW began the process of conducting a sale of the collateral described in the Kshel Pledge, the Kshel UCC-1, the Harlem Pledge and the Harlem UCC-1 (i.e. Kshel's and Harlem Phoenix's membership interests in Second Phoenix) pursuant to Article 9 of the UCC under the Loan Documents by sending statutory notice, hiring an auctioneer and advertising an Article 9 UCC sale (the "UCC Sale") of the membership interests of Harlem and Keshel in Second Phoenix. The Notification of Disposition of Collateral by Public Sale dated October 9, 2017 served on Second Phoenix, Harlem Phoenix and Kshel noticed a November 15,

3

2017 sale date.

**The State Court Action**

M.      On November 14, 2017, Second Phoenix, Kshel and Harlem Phoenix commenced an action Supreme Court of the State of New York, County of New York [Index No. 160134/2017] (the "State Court") seeking, among other relief, a temporary restraining order staying the UCC Sale. The State Court entered an Order to Show Cause on November 14, 2017 staying SKW from proceeding with the UCC Sale and scheduling a hearing for January 4, 2018.

**The Bankruptcy Filing**

N.      The Debtors filed these chapter 11 cases on January 3, 2018 (the "Petition Date").

O.      Second Phoenix's only assets are the Properties.

P.      The only assets of Harlem Phoenix and Kshel are their membership interests in PropCo.

Q.      The Debtors report in their bankruptcy filings that (i) they have no income and (ii) for years 2016, 2017 and 2018 through the date hereof, they have had no revenue.

R.      On January 2, 2018, SKW made a real estate tax advance in the amount of $74,038.08 to pay the real property taxes on the Properties.

S.      The Debtors report in their bankruptcy filings that Second Phoenix is a party to a lease agreement with Brown Meadow, Inc.

T.      On March 12, 2018, the Debtors filed an application to retain Avison Young-New York, LLC as real estate advisors to market the East 125th Street property for a refinance and the Second Avenue and/or the East 125th Street property for a sale or refinance [ECF Docket No. 26] (the "AYNY Retention").

U.      On March 15, 2018, the Debtors filed a joint reorganization plan [ECF Docket No.

4

31] ("Plan") and disclosure statement [ECF Docket No. 32] (the "Disclosure Statement") in connection therewith.

V. On March 16, 2018, SKW filed a Motion for Order: (I) Modifying the Automatic Stay to Permit SKW East VH LLC to Exercise its Rights with Respect to the Properties or, Alternatively, (II) Dismissing the Chapter 11 Cases, or Alternatively, (III) Designating the Debtors Single Asset Real Estate Entities Under Sections 101(51B) of the Bankruptcy Code and (IV) Granting Such Other Relief [ECF Docket No. 34] (the "SKW Motion").

W. On March 21, 2018, SKW filed an Objection to the AYNY Retention [ECF Docket No. 38] (the "AYNY Retention Objection").

X. On March 22, 2018, the Debtors filed a response to the AYNY Retention Objection [ECF Docket No. 39] including a proposed modified retention order.

Y. On April 4, 2018, the Debtors filed an objection to the SKW Motion [ECF Docket No. 41] (the "Debtors' Opposition").

Z. On April 6, 2018, SKW filed its Reply to the Debtors' opposition [ECF Docket Nos 47; 49] (the "SKW Reply").

AA. On April 6, 2018, SKW filed proofs of claim in each of the Debtors' chapter 11 cases in an amount not less than $12,903,057.88 calculated as of January 2, 2018 (the "SKW Claim").

BB. On April 19, 2018, the Debtors filed a supplement to the AYNY Retention along with a further modified proposed retention order [ECF Docket No. 53] (together with the "Proposed AYNY Retention Order").

CC. Relief Requested. In light of the uncertainty, risk, costs and expenses of litigation, the Parties have conferred and negotiated a resolution of the disputed issues relating to, among

5

other things, SKW Motion, the Debtors' Opposition, SKW Reply, AYNY Retention, SKW Claim and the conduct of these cases generally. These negotiations resulted in a settlement, on terms more fully set forth below, which will provide the Debtors with an opportunity to achieve a viable exit in these chapter 11 cases while giving the Lender certainty regarding its claim and timing of any sale or refinance transaction(s). The Parties submit that entry of this Order is in the best interests of the Debtors, their estates, their creditors and other parties in interest and consistent with the Debtors' fiduciary duties.

**NOW THEREFORE, IT IS HEREBY ORDERED THAT:**

1. <u>Recitals</u>. The Debtors hereby admit and acknowledge the facts contained in the Recitals herein each of which are incorporated into these Decretal paragraphs as if fully set forth herein.

2. <u>Effectiveness</u>. Except as otherwise set forth herein, this Stipulation shall become effective as of the date of the entry of an order of the Bankruptcy Court approving the Stipulation (the "Effective Date").

3. <u>AYNY Retention</u>. SKW hereby consents to the Debtors' retention of AYNY, *nunc pro tunc* to April 11, 2018; provided, however, that the Proposed AYNY Retention Order shall be modified to, and any order approving the AYNY Retention shall, provide that:

> (a) the term of AYNY's retention shall be through the earlier to occur of (i) the closing of sale(s) and/or refinance transaction(s) that pays Lender in full and (ii) dismissal of these cases;
>
> (b) AYNY shall not be entitled to payment of any Commission (as defined in the AYNY Retention) unless (x) a closing of a sale and/or refinance transaction(s) that provides for payment to Lender in cash and in full occurs prior to the earlier to occur of (i) dismissal of these cases and (ii) October 15, 2018 and provided further that the Debtors otherwise have complied with the timeframes contained herein or (y) upon dismissal of these cases based on a default hereunder, AYNY shall be entitled to a

6

              Commission of 1% of the gross sale price if the Properties are sold by SKW within 90 days of dismissal to a buyer identified on a list of no more than five parties/groups provided by AYNY to SKW at the time of dismissal together with proof of pre-dismissal demonstrable progress toward consummation of a sale to, or negotiations with, such parties;

      (c)  except with respect to AYNY's limited right to a Commission post-dismissal as set forth in paragraph 3(b) hereof, the tail periods contained in each of the Exclusive Right to Sell Agreement and the Debt Financing Advisory Agreement shall be deleted and of no force and effect; and

      (d)  in the event of a conflict between the terms of the AYNY retention order and this Stipulation, the terms of this Stipulation shall govern.

    4.    <u>Allowance of Lender's Claim</u>.  The Debtors, on behalf of these estates, hereby acknowledge and agree that Lender has valid, enforceable, non-avoidable, properly perfected liens on the Collateral and an allowed secured claim as of April 11, 2018 in the amount of: (a) principal of $12,000,000, (b) accrued interest since the Maturity Date of $1,219,166.34 calculated at the per diem rate of $5,833.33 (based on the Reduced Interest Rate hereafter defined), (c) a compromised amount of Lender's legal fees of $150,000, (d) the real estate tax advance of $74,038.08 for a total of $13,443,204.42 (the "SKW Allowed Claim").  For purposes of this Settlement only, Lender has agreed to reduce the contract default interest rate provided for in the Loan Documents from 20% to 17.5% (the "Reduced Interest Rate").  Interest continues to accrue postpetition on the SKW Allowed Claim at the Reduced Interest Rate from and after April 11, 2018 together with SKW's reasonable legal fees and expenses which interest and fees shall be added to the SKW Allowed Claim.  Debtors agree that Lender shall be paid in full, in cash, on or before October 15, 2018 and that the net proceeds of any sale or refinance of either of the Properties shall be remitted to SKW, at closing.  Should the Debtors default hereunder, the Reduced Interest Rate shall be rescinded

and, effective as of the Maturity Date, the SKW Allowed Claim shall be recalculated using the contract default rate of 20%.

     5.    <u>Sale/ Refinance and Plan Milestones</u>.  The Debtors hereby agree to the following dates and deadlines in these cases:

     (a)    On or prior to July 31, 2018, they will either:

> (i) have filed with this Court for approval, a signed, binding, firm, non-cancelable contract for sale for one or both Properties with a downpayment of at least 10%, no financing or any contingencies other than an order of this Court approving the sale free and clear of liens, claims and encumbrances, to a *bona fide* independent third party unaffiliated with Debtors, providing for a purchase price in amount(s) sufficient to pay Lender (and all closing costs including Debtors' counsel, United States Trustee fees and Avison Young) in full, in cash, at closing of such transaction(s) and a time of essence closing date of October 15, 2018; and/or
>
> (ii) have obtained a loan commitment not conditioned on underwriting or appraisals in an amount sufficient to pay the Lender (and all closing costs including Debtors' counsel, United States Trustee fees and Avison Young) in full at closing of such transaction(s) from a reputable third party lender unaffiliated with the Debtors by no later than October 15, 2018; and/or
>
> (iii) have filed a motion under section 363 of the Bankruptcy Code for approval of an auction sale process providing for (a) minimum purchase price(s) in amount sufficient to pay Lender (and all closing costs including Debtors' counsel, United States Trustee fees and Avison Young) in full at closing of the contemplated sale or refinance transaction(s) and (b) Lender's right to credit bid at amounts up to and including all sums due Lender. In the event Lender is the successful bidder at such an auction sale, then within ten (10) days following the deeding of a Property and/or the Properties to Lender following same, these chapter 11 cases will be dismissed in the

8

same manner as provided in paragraph 8 hereof and the obligations of the lender to certain third parties as set forth therein shall equally apply.

(b) If the Debtors determine to proceed with a 363 auction process in accordance with 5(a)(iii) above and this paragraph 5(b), the following deadlines and requirements shall apply:

(i) the Debtors shall provide a copy of any 363 sale motion to Lender prior to filing and by no later than July 20, 2018 for review, comment and approval;

(ii) the terms of the sale provide for an auction to occur on or about September 15, 2018 with minimum upset prices for each of the Properties of $6,000,000 for Second Avenue and $8,000,000 for 125th Street, but in no event, not less than the amounts necessary to pay Lender (and all closing costs including Debtors' counsel, United States Trustee fees and Avison Young) in full at closing, and no less than a 10% deposit and execution of an unconditional Contract of Sale for one or both Properties (no financing or any contingencies other than an order of this Court approving the sale free and clear of liens, claims and encumbrances) that provides for a time of essence closing date of October 15, 2018 and which contract of sale is in a form acceptable to Lender;

(iii) any hearing to consider a 363 sale motion or approve auction bidding procedures shall be heard, subject to the Court's availability, by no later than August 31, 2018; and

(iv) any sale approval of an auction to occur on or before twenty (20) days following the actual date in paragraph 5(b)(iii) above or September 20, 2018, whichever date is later.

(c) Closing of any sale/ refinance transaction(s) must occur by no later than October 15, 2018.

(d) SKW agrees that it will not interfere with Debtors' sale/refinancing efforts unless and until the happening of an uncured default, as such a default is addressed in paragraph 6 of this Stipulation.

9

   6. <u>Default</u>. If the Debtors fail to achieve any of the milestones contained in paragraph 5 hereof, the Debtors hereby agree to the dismissal of these chapter 11 cases upon the occurrence of such default, if not cured within three (3) business days following notice to the Debtors (by email or overnight delivery to undersigned Debtors' counsel). In such event, SKW shall have the right, upon not less than three (3) days' notice of such uncured default to the Debtors, the Court and the Office of the United States Trustee, to submit an order of dismissal for entry by the Court. As provided in paragraph 8 of this Stipulation, any dismissal order entered in these chapter 11 cases shall provide that SKW shall pay, only upon SKW obtaining control of the Properties through either a UCC Art. 9 foreclosure of the equity pledges of Harlem Phoenix and Kshel or ownership of the Properties by bidding and foreclosing such interests at a sale or should a third party purchase such interests at the Article 9 sale (a "Change of Control"), the fees and expenses of Debtors' counsel allowed by order(s) of this Court not to exceed $200,000.00 (the "Capped Amount"), and the fees of the United States Trustee incurred through the date of dismissal. SKW shall pay any UST fees (together with any applicable interest thereon pursuant to 31 U.S.C. § 3717) due within 5 business days of entry of order of dismissal. SKW hereby agrees that by no later than (10) days from the dismissal of these cases based on a default hereunder, SKW will deposit the Capped Amount in escrow with SKW's counsel which amount, only to the extent of fees and expenses allowed by the Court (unless SKW agrees otherwise), shall be released from escrow to Debtors' counsel within 5 business days of a Change of Control (as defined above). If no order(s) approving compensation and/or expenses of Debtors' counsel have been entered by the Court as of the date the dismissal order is submitted for entry, SKW shall have no obligation to fund the Capped Amount into escrow or otherwise pay the fees and expenses of Debtors' counsel hereunder and the dismissal order shall only require payment of the fees of the Office of the United States Trustee.

10

Notice of SKW's deposit of the Capped Amount in escrow shall be provided to Debtors' counsel within one (1) day of such deposit. Upon dismissal of these cases, SKW agrees that any rescheduled UCC Article 9 Sale shall have a sale date no sooner than 45 days following dismissal.

7.  State Court Action. The parties shall execute a Stipulation discontinuing the State Court action with prejudice, in the form annexed hereto as *Exhibit A* and the Debtors shall file such Stipulation no later than (7) days of the date this Stipulation of Settlement is approved by the Court. Each of the Debtors and Evan Blum hereby agree to execute and deliver Releases in favor of SKW in the form annexed hereto as *Exhibit B*.

8.  Chapter 11 Administrative Expenses. In the event of a dismissal of these cases in accordance with paragraph 6 of this Stipulation, SKW agrees that it will pay, as provided for and in accordance with paragraph 6 of this Stipulation, the reasonable legal fees and costs of Debtors' counsel, only to the extent allowed by order(s) of this Court as of the date of dismissal, up to the Capped Amount and the fees of the United States Trustee (with applicable interest thereon pursuant to 31 U.S.C. § 3717). Nothing contained herein or by the Court's approval of this Stipulation of Settlement and entry of this Order shall be construed as, or deemed to be, an allowance of fees or expense pursuant to sections 328, 330 or 331 of the Bankruptcy Code. The allowance of compensation for any pre-dismissal services shall be upon application(s) to and order(s) of this Court. Debtors' counsel shall file interim fee applications in accordance with 331 of the Bankruptcy Code (or as may be modified by order of this Court) and, notwithstanding Bankruptcy Rule 2002(a), such applications may be scheduled for hearing on (14) days' notice. Any allowed fees and costs paid up to the Capped Amount pursuant to this Stipulation, to the extent paid prior to SKW's payment in full, shall be added to the SKW indebtedness under the

11

Loan Documents and shall carry interest at the rate of 20% from the date funded through SKW's payment in full.

9. <u>Insurance and Taxes</u>. The Debtors shall maintain appropriate insurance on the Collateral consistent with the provisions of the Loan Documents. Because the Debtors' have no cash flow, they are seeking SKW to make a protective advance for real estate taxes that will become due on the Properties in or about July 2018. If SKW makes such protective advance and pays the real estate taxes that become due in or about July 2018, SKW shall be entitled to charge the Debtors interest thereon at the Reduced Interest Rate from the date of the advance until paid, or, in the event of a default hereunder, at the contract default rate of 20% retroactive to the date paid. Failure of the Debtors to make this tax payment shall not constitute a default hereunder.

10. <u>Assignment of Loan Documents</u>: Provided the Debtors are not in default hereunder, SKW agrees to cooperate in any assignment of the Loan Documents to a buyer or lender in connection with a sale or refinance of the Properties.

11. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

12. <u>Effect of this Order</u>. This Order shall take effect and be enforceable immediately upon execution.

13. <u>Debtors' Authorization</u>. The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Order.

14. <u>SKW's Authorization</u>. SKW is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

15. <u>No Waiver</u>. Nothing contained herein shall be deemed a waiver of any of Lender's

12

rights and remedies in these chapter 11 cases, including without limitation the right to seek and collect any and all amounts due Lender under the Loan Documents in the event these cases are dismissed based on the Debtors' failure to meet the milestones set forth in paragraph 5 hereof.

16. <u>No Modification</u>. The dates and deadlines contained herein were heavily negotiated and are an integral part of this settlement. Accordingly, the Parties hereby acknowledge and agree that any modification of the dates and deadlines contained herein shall not be permitted unless agreed to in writing by the Parties.

17. <u>Binding Effect</u>. Immediately upon entry by the Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon the Debtors, any Chapter 11 trustee, Chapter 7 trustee, post-confirmation trustee or other similar fiduciary or assignee of any such trustees or the Debtor and any successors and assigns of Lender.

18. <u>Retention of Jurisdiction.</u> This Court hereby retains jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation and/or enforcement of this Order.

Dated: New York, New York
       April 25, 2018

| | |
|---|---|
| Debtors in Possession<br>By their Counsel<br>MARC STUART GOLDBERG, LLC<br>By: | SKW East VH LLC<br>By its Counsel<br>MORITT HOCK & HAMROFF LLP<br>By: |
| /s/ Marc Stuart Goldberg<br>MARC STUART GOLDBERG<br>670 White Plains Road<br>Suite 121<br>Scarsdale, NY 10583<br>(914) 725-8200 | /s/ Marc L. Hamroff<br>MARC L. HAMROFF<br>THERESA A. DRISCOLL<br>400 Garden City Plaza<br>Garden City, New York 11530<br>(516) 873-2000 |

| SECOND PHOENIX HOLDING LLC | KSHEL REALTY CORP. |
|---|---|
| By: /s/ Evan Blum | By: /s/ Evan Blum |
| Name: | Name: |
| Title: | Title: |

HARLEM PHOENIX REALTY CORP.

EVAN BLUM

By: /s/ Evan Blum

/s/ Evan Blum

Name: Evan Blum
Title:

**IT IS SO ORDERED.**

Dated: May 2, 2018
New York, New York

                                                                              /s/**Martin Glenn**
                                                                    MARTIN GLENN
                                                United States Bankruptcy Judge